Derby v. Freeman                         CV-93-32-B      03/02/94
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


Alvin D. Derby

     v.                                      Civil No. 93-32-B

Patrick K. Freeman, et al.


                            **O R D E R**

     Before the court in this civil action is the defendants'

motion to dismiss, and/or motion for summary judgment pursuant to

Fed. R. Civ. P. 12(b)(6) and 56(b), respectively.[1]  Defendants

contend that plaintiff, Alvin Derby, has failed to allege

sufficient facts to support a claim that his rights were

violated, and that they are entitled to judgment as a matter of

law.

                  **I.   STANDARD OF REVIEW**

     I assess defendants' motion according to the following

principles.  Summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

_____

     [1] As per my oral order at the September 8, 1993 hearing,
both parties have been given a chance to provide the court with
supplemental material regarding this motion.  Accordingly,
defendant's motion will be treated as a motion for summary
judgment.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); accord Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). A "material" issue is one that "affect[s] the outcome of the suit . . . ." Anderson, 477 U.S. at 248. The burden is on the moving party to aver the lack of a genuine, material factual issue, Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the non-movant, according the non-movant all beneficial inferences discernable from the evidence. Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). If a motion for summary judgment is properly supported, the burden shifts to the non-movant to show that a genuine issue exists. Donovan v. Agnew, 712 F.2d 1509, 1516 (1st Cir. 1983).

## II. FACTS

Plaintiff and his spouse borrowed $45,000 from defendant Farmers Home Administration ("FmHA") for the purchase of a

2

personal residence located in Benton, New Hampshire. The loan was secured by a mortgage on the property. The promissory note the Derbys signed provided for monthly payments of $513.00. However, the Derbys qualified for interest credit assistance and their monthly payment was reduced to $134.00. The Derbys later obtained a second FmHA loan in the amount of $2,430.00 to repair the chimney and to replace the oil burner. This note was secured by a second mortgage on the property. The Derbys also qualified for interest credit assistance on this loan and their monthly payment was thus reduced from $25.00 to $8.00.

When the Derbys became unable to make even the reduced payments on their two loans, they applied for and received a two-year moratorium on their payment obligations. By the time the moratorium expired, the Derbys had divorced and neither party was residing in the home. Plaintiff, by that time, had also begun serving a sentence at the New Hampshire State Prison due to his conviction for felonious sexual assault. When the moratorium expired, the FmHA wrote to plaintiff informing him that the overdue balance on his two loans of $6,664.95 that had accrued during the moratorium would be reamortized over the remaining payments and his new monthly payment would be $529.00. In November 1989, the FmHA gave plaintiff notice that it was

3

cancelling any further interest credit assistance because he no longer occupied the home. Thereafter, the Derbys failed to make any further payments on the loans.

Approximately a year later, on November 26, 1990, the FmHA notified the Derbys that their loans were being accelerated because of a monetary default. Plaintiff contends that he never received notice of said acceleration. Nevertheless, the record reflects that he asserted his right to appeal from the acceleration, and a hearing was conducted on the matter at the New Hampshire State Prison on April 24, 1991. The hearings officer issued a written opinion upholding the FmHA's authority to accelerate plaintiff's loans, and plaintiff appealed to the National Director of Appeals. Plaintiff also requested copies of all letters and reports the FmHA had issued between August and May 1991 regarding his property. Defendants responded with copies of a number of relevant letters, but advised plaintiff that it would not be able to release any reports until the National Director of Appeals determined whether the reports were confidential. Plaintiff received no further communication regarding the reports, and further contends that he received no notice of the National Director's January 16, 1992 decision denying his appeal. On January 14, 1993, the FmHA conducted a

4

foreclosure sale of the property.

### III.  ANALYSIS

**A.  Issues**

Plaintiff brings the instant action to set aside the foreclosure of his property by defendants FmHA and its employees, Patrick Freeman, and Richard M. Roderick, and to recover money damages for the same.  Plaintiff contends that defendants failed to comply with N.H. Rev. Stat. Ann. 479:25, and that the foreclosure of his property violated federal regulations because 1) plaintiff did not receive proper notice of acceleration, 2) defendants failed to respond to plaintiff's request for reports, 3) defendants failed to notify plaintiff of their final decision of his appeal, and 4) defendants improperly revoked the moratorium and denied him further credit assistance.[2]  I consider these arguments in turn, according plaintiff the benefit of all reasonable inferences discernable from the evidence.

---

[2]Although plaintiff also alleges various constitutional violations, all of his constitutional claims are based upon his contention that defendants also violated the above-described statutes and regulations.

**B.** **New Hampshire Law**

Plaintiff first contends that defendants failed to comply with the State of New Hampshire's notice requirements because they did not publish notice of the foreclosure sale in a newspaper published in Grafton County, where the property is situated. N.H. Rev. Stat. Ann. 479:25 (I) provides:

> Notice of such sale shall be published once a week for 3 successive weeks in some newspaper of general circulation within the town or county in which the property is situated. In the event that the mortgaged premises are situated in more than one county, publication in a newspaper of statewide circulation shall be sufficient. . . .

Defendants assert, and I agree, that a plain reading of the statute indicates that proper publication is effectuated when notice is published in a newspaper of general circulation in the town or county of the mortgaged premises. R.S.A. 479:25 does not require that the newspaper be published in the county in which the property is located. Defendants have provided the court with uncontroverted evidence that they published notice of the foreclosure sale in the Manchester Union Leader on December 9, 16, and 23, 1992. Since it is undisputed that the Manchester Union Leader is a newspaper of general circulation in every county in the state, I find that defendants have complied with the notice requirements found in N.H. Rev. Stat. Ann. 479:25 (I).

Plaintiff next contends that FmHA failed to send notice to recorded lienholders in violation of N.H. Rev. Stat. Ann. 479:25 (II) which provides:

> A copy of said notice shall be served upon the mortgagor or sent by registered or certified mail to his last known address or to such person as may be agreed upon in the mortgage at least 25 days before the sale. The term "mortgagor" shall include the mortgagor and any grantee, assignee, devisee or heir of the mortgagor holding a recorded interest in the mortgaged premises subordinate to the lien of the mortgage, provided that such interest is recorded, at least 30 days before the date of the sale, in the registry of deeds for the county in which the mortgaged premises are situated. Like notice shall be sent to any person having a lien of record on the mortgaged premises, provided that the lien is recorded at least 30 days before the date of the sale in the registry of deeds. . . .

Defendant FmHA has provided this court with evidence that it conducted title searches on June 23, 1992 and December 15, 1992 which revealed the lienholders of record, and that these lienholders were subsequently served with a copy of the Notice of Mortgagee Sale. This evidence is unrebutted. Accordingly, I find that the defendants complied with N.H. Rev. Stat. Ann. 479:25 (II), and are entitled to summary judgment with respect to plaintiff's state law claims.

7

## C. **Federal Law**

### 1. Notice

Plaintiff asserts that defendants failed to notify him of the acceleration of his loan as required by federal law.

7 U.S.C.A. § 1981(d) provides in pertinent part:

(a) Requirement
The Secretary shall provide notice by certified mail to each borrower who is at least 180 days delinquent in the payment of principal or interest on a loan made or insured under this chapter.
(b) Contents
The notice required under subsection (a) of this section shall--
(1) include a summary of all primary loan service programs, preservation loan service programs, debt settlement programs, and appeal procedures, including the eligibility criteria, and terms and conditions of such programs and procedures;
(2) include a summary of the manner in which the borrower may apply, and be considered, for all such programs, except that the Secretary shall not require the borrower to select among such programs or waive any right in order to be considered for any program carried out by the Secretary;
(3) advise the borrower regarding all filing requirements and any deadlines that must be met for requesting loan servicing;
(4) provide any relevant forms, including applicable response forms;
(5) advise the borrower that a copy of regulations is available on request; and
(6) be designed to be readable and understandable by the borrower. . . .
(d) Timing
The notice described in subsection (b) of this section shall be provided. . .
(3) before the earliest of. . .

8

(C) accelerating the loan;
(D) repossessing property;
(E) foreclosing on property. . .

Plaintiff does not dispute that he received a notice entitled "NOTICE OF ACCELERATION OF YOUR DEBT TO THE FARMERS HOME ADMINISTRATION, DEMAND FOR PAYMENT OF THAT DEBT, AND NOTICE OF YOUR OPPORTUNITY TO HAVE A HEARING CONCERNING THIS ACTION." He contends, however that the two errors in the notice, that it was addressed "Dear Mrs. Karatsanos," and that it incorrectly stated the date of execution of the promissory note as November 17, 1982 instead of November 17, 1983, made the notice insufficient. Plaintiff further contends that he never received the corrected notice of acceleration, even though the defendants insist that they mailed it to him less than two weeks later.

Section 1981(d) was promulgated in response to extensive litigation surrounding the procedural requirements that must be met by the FmHA in administrating its loan requirements. Its purpose is to give borrowers enough information to make them aware of the options available to them, including their option to appeal. The court has reviewed the letters sent to Mr. Derby notifying him of the acceleration of his loan, and finds the errors that plaintiff complains of to be inconsequential. The facts that plaintiff proceeded with his appeal by writing a

9

letter to the National Appeals Staff, and that a hearing was held pursuant to that appeal at the New Hampshire State Prison on April 24, 1991, aptly demonstrate that plaintiff was aware of his appeal rights and timely exercised them.  Plaintiff has suffered no harm from the alleged lack of notice, and he is therefore entitled to no relief on this basis.

2.  <u>Request for Reports</u>

Plaintiff next contends that defendants improperly ignored his request for reports in violation of federal regulations.

7 C.F.R. 1900.56 requires:

(a) When an applicant appeals a decision and requests a hearing, the appeal will be handled as follows: . . . (2). . .The appellant's case file including the FmHA appraisal will be made available to the appellant or his representative at the FmHA decision maker's office for 10 working days following the receipt of a request for appeal. If the appellant has made a request to inspect or to receive copies of FmHA material concerning the case including any FmHA appraisal, the material will be made available to the appellant or the appellant's representative at the FmHA decision maker's office as soon as possible, but no later than 10 working days following the receipt of the request for the material. A written request from the appellant will not be required.  Requests for information of a confidential nature exempt from disclosure under § 2015.204 of FmHA Instruction 2015-E, (available in any FmHA office) will be handled in accordance with that Instruction.  An FmHA employee will insure that no material is destroyed or removed from the file. . . .

Plaintiff submitted a request for a copy of all of letters and reports between August 1989 and May 1991 to the National

10

Appeals staff along with his request for review.  In response, the staff gratuitously provided plaintiff with a copy of all letters written to him during that time period.  However, they did not forward the reports that the plaintiff requested because of a concern that they may have been confidential.  Previously, however, they did inform him that the file would be made available for review by plaintiff or his representative at the FmHA decision-maker's office.  Accordingly, I find that the defendants met the statutory requirements found in 7 C.F.R. 1900.56 by providing all statutorily required information to the plaintiff through making the file available to him.  That plaintiff did not avail himself of the opportunity to review the file when given the chance does not provide him grounds for relief in this court.

3. <u>Defendants failed to notify plaintiff of their final decision of his appeal</u>

Plaintiff next contends that the defendants failed to notify him of their final decision of his appeal.

7 U.S.C.A. § 1983(b) provides in pertinent part:

(a) Regulations: notice of decision; opportunity for meeting and hearing

> The Secretary shall provide an applicant for or borrower of a loan, or an applicant for or recipient of a loan guarantee, under this chapter

11

> who has been directly and adversely affected by a decision of the Secretary made under this chapter (hereafter in this section referred to as the "appellant") with written notice of the decision, an opportunity for an informal meeting, and an opportunity for a hearing with respect to such decision, in accordance with regulations issued by the Secretary consistent with this section.

The provisions of § 1983(b) were met when plaintiff was informed of the Secretary's initial notice of acceleration, and plaintiff proceeded with his appeal. At that time he was offered an appeal hearing and, in fact, he availed himself of that opportunity. His subsequent appeal to the National Director of Appeals followed, but plaintiff asserts that he never received notice of the Secretary's final decision. Regardless, following the Secretary's decision, plaintiff's next avenue of redress was to file suit to set aside the defendant's foreclosure in this court. Even accepting plaintiff's allegation that he never in fact received notice of the Secretary's final decision, I cannot find that plaintiff was in any way prejudiced by this lack of notice because I have allowed him to proceed with the present case as if he had made a timely challenge to the Secretary's decision. Because he has been allowed to obtain judicial review of the defendant's actions, he has been afforded all available remedies to which he is entitled, and plaintiff has no cause for

12

relief on these grounds.

>   4.   <u>Defendants improperly revoked the moratorium
>        and denied further credit assistance</u>

Finally, plaintiff contends that the defendants improperly revoked his moratorium and denied him further credit assistance.

>   **a.   the moratorium**

There seems to be some confusion in the record as to exactly which date plaintiff's moratorium was granted.  Defendants assert that the moratorium, although granted on September 3, 1987, actually covered the August 27, 1987 mortgage payment, and therefore ran from that date.  Plaintiff asserts that the moratorium should run from the date it was granted, September 3, 1987.  Confronted with these two plausible options, the court need not decide the dispute because plaintiff is not entitled to relief in either case.

If, as defendants assert, the moratorium runs from August 27, 1987, they correctly terminated the moratorium on August 27, 1989.  The regulations clearly state that the maximum length of a moratorium is two years:

> (a) Definitions. As used in this section:
> (1) Moratorium. A period of up to 2 years during which scheduled payments are deferred for payment at a later date. . . .
> (3) Temporary. A period of time not to exceed 2 years.
> . . .

13

>(4)(b). . . All of the following conditions must exist before a moratorium can be granted:
>(2) The borrower must occupy the dwelling unless the dwelling is determined by FmHA to be uninhabitable.
>(e) Moratorium period. A moratorium will be in effect for a period not to exceed 2 years unless earlier cancelled.

7 C.F.R. 1951.313.  Hence plaintiff's moratorium expired on August 27, 1989.  On the other hand, accepting plaintiff's argument that the moratorium should be construed to have commenced on September 3, 1987, thus expiring September 3, 1989. Plaintiff never applied for a new moratorium.  Further, the FmHA could not have granted a new moratorium because plaintiff no longer resided at the home beginning on or about August 29, 1989. Hence, plaintiff cannot show that he is entitled to relief based on the fact that he should have been granted a second moratorium.

### b.   interest credit assistance

Plaintiff's mother informed the FmHA that plaintiff was no longer residing at the property on September 11, 1989.  The FmHA responded pursuant to 7 C.F.R. 1944.34(f), that because neither borrower was residing at the property, plaintiff was no longer eligible for interest credit assistance, which would have substantially reduced the plaintiff's monthly payments.  7 C.F.R. 1944.34(f) states:

14

(f) Eligibility. To be eligible for interest credit, a borrower must qualify for a Section 502 loan, must personally occupy the dwelling. . .
(k) Cancellation of interest credit agreements.
(1) Reasons for cancellation. An existing Interest Credit Agreement will be cancelled whenever. . .
(ii) The borrower ceases to occupy the dwelling. . . .

By its plain language, the applicable federal regulations do not allow the FmHA to grant credit assistance to the plaintiff due to the fact that he no longer resides in the home. Hence, plaintiff has no grounds for relief in this court.

## IV. CONCLUSION

For the foregoing reasons the defendant's motion for summary judgment (document 12) is granted.


SO ORDERED.


_____
Paul Barbadoro
United States District Judge

March 2, 1994

cc:   Alvin D. Derby, Jr., pro se
      Patrick Walsh, Esq.


15